UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS SOLER-NORONA, [1]

        Petitioner,               Case No. 17-11357
                                   Honorable Linda V. Parker

v.

NOAH NAGY,

        Respondent,

_____/

**OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING THE MOTION TO STRIKE THE SUPPLEMENTAL ANSWER (ECF NO. 33), (3) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (4) GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Carlos Soler-Norona ("Petitioner), incarcerated at the Cooper Street Correctional Facility in Jackson, Michigan, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for conspiracy to commit armed robbery.  For the reasons that follow, the Court is denying Petitioner habeas relief.

---

[1] Petitioner's name has had different spellings.  In some State court pleadings, his last name is "Solernorona" and in others it is "Soler-Norona."  This Court uses the latter, as that is what Petitioner used when filing his current petition.

# I. Background

This Court recites verbatim the relevant facts as described by the Michigan

Court of Appeals:

> In December 2008, police arrested James Whittington for home invasion. At the time of his arrest, Whittington had several similar charges pending against him throughout southern Michigan. While in jail, Whittington told the officer assigned to his case, Southfield Police Officer Corey Bauman, that he had information regarding a planned robbery. More specifically, Whittington told Officer Bauman that he and five other men, including Solernorona, Lester Jennings-Bush, Henry Bush, Huley Kennedy, and Julio Licorish, planned to rob the Darakjian Jewelry store in Southfield.

> While still in custody, Whittington called Jennings-Bush and asked him if the men still planned to rob the store. Jennings-Bush confirmed that the plan was still in effect, and he told Whittington about a meeting during which the men would further discuss the plan. Whittington agreed to attend the meeting while wearing a remote listening device so that police could hear the discussion. The men planned to meet at Jennings-Bush's house and then go to a restaurant where they would hold the meeting. When it came time to meet, the police followed Whittington to Jennings-Bush's house. However, the restaurant was overcrowded, so the men decided to go to Solernorona's house instead. The police surrounded the house with 40 to 50 officers and waited for the men to begin their meeting.

> While monitoring the remote listening device, Officer Bauman heard the men discuss the robbery. The men stated that they planned to take the owner of the jewelry store and his family hostage in their home and that half the men would then escort the jeweler to his store. They would use the jeweler's family as leverage to convince him to open the vault. They agreed that they would torture the jeweler and his family if necessary. The men also stated that they would use weapons in the robbery, including an AK–47 assault rifle and handguns. Officer Bauman heard Solernorona state that he had already obtained the guns and heard Kennedy state that he would rather engage in a shootout with police than go back to jail. After

2

hearing the men make these statements, Officer Bauman decided to enter Solernorona's house and arrest them.

Police later obtained a search warrant to search Solernorona's house. They recovered two handguns, a laptop computer, torn-up note cards, and a Darakjian jeweler's business card. The computer contained data showing that it had recently been used to search for the Darakjian jewelry store and to obtain directions to the store. The note cards contained a checklist, written in Spanish, of things the men would need to do and things that they should avoid during the robbery.

Police also obtained a search warrant to search Jennings-Bush's house. They recovered an assault rifle, a shotgun, and ammunition from his bedroom. Additionally, they found marijuana, packaging material, and scales. They found a white substance that they initially believed to be cocaine, but later testing refuted that initial belief. A computer that the police recovered from Jennings-Bush's house also contained evidence related to the Darakjian jewelry store.

*People v. Solernorona*, No. 299269, 2012 WL 1521444, at *1-2 (Mich. Ct. App. May 1, 2012). These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

In 2010, an Oakland County Circuit Court jury found Petitioner guilty of conspiracy to commit armed robbery and conspiracy to commit unlawful imprisonment. The trial court vacated the latter conviction, concluding that the convictions merged. The trial court then sentenced Petitioner to 210 months to 50 years' imprisonment. Petitioner's conviction was affirmed on direct appeal but the case was remanded for resentencing. *Id.* On remand, the trial court re-sentenced Petitioner to 180 months to 50 years' imprisonment. The Michigan appellate

3

courts subsequently affirmed Petitioner's new sentence. *People v. Solernorona*, No. 311641, 2014 WL 129270 (Mich. Ct. App. Jan. 14, 2014), *leave denied*, 498 Mich. 904 (2015). The United States Supreme Court denied Petitioner's petition for writ of certiorari. *Solernorona v. Michigan*, 569 U.S. 951 (2013), *reh'g denied*, 579 U.S. 924 (2016).

On April 27, 2017, Petitioner initiated this action by filing his § 2254 petition for habeas relief (ECF No. 1) and Respondent answered (ECF No. 14). Petitioner subsequently moved to amend his petition to add additional claims. The Court granted the motion but held the matter in abeyance so Petitioner could return to the State courts to exhaust these additional claims. (ECF No. 20); *Soler-Norona v. Brewer*, No. 17-11357, 2018 WL 1964677 (E.D. Mich. Apr. 26, 2018).

Petitioner then filed a post-conviction motion for relief from judgment in the State trial court, which the court denied. (ECF No. 32-6.) The Michigan appellate courts denied Petitioner leave to appeal. *People v. Soler-Norona*, No. 348547 (Mich. Ct. App. July 1, 2020), *leave denied* 953 N.W.2d 398 (Mich. 2021).

In his original habeas petition, Petitioner seeks habeas relief on the following grounds:

> I. [Petitioner] is entitled to a new trial because of the harm caused by the admission of evidence obtained from a warrantless search of his home, which search was not justified by any exception to the warrant requirement of the Fourth Amendment. The admission and use of the illegal obtained evidence w[ere] fundamentally unfair and violated Petitioner's due process.

4

II.  The trial counsel['s] failure to object to the admission of the evidence seized from the search of Lester Jennings Bush's home deprived Petitioner of his Sixth Amendment right to the effective assistance of counsel.  The Michigan Court of Appeals unreasonabl[y] applied the two prong[] test of *Strickland v. Washington*.

III.  [Petitioner's] Sixth Amendment right to the effective assistance of counsel has been denied.  Trial counsel was acting under the influence of an actual conflict of interest that adversely affected his performance.  The Michigan Court's decision was contrary to United States Supreme Court precedent.

IV.  [Petitioner's] Sixth and Fourteenth Amendment rights were violated by judicial fact finding, which increased the floor of that permissible sentence, in violation of *Alleyne v. United States*.

V.  Petitioner's counsel['s] failure to object to the admission of surprise witnesses to the prosecutor's witness list and counsel['s] failure to investigate and pursue witness criminal record "fell below an objective standard of reasonableness" and deprive[d Petitioner] of his rights to effective assistance of counsel.

(ECF No. 1 at Pg ID 7-8.)  In his amended habeas petition, Petitioner asserts these grounds:

I.  Petitioner's Fourteenth and Sixth Amendment rights were violated[] when the prosecution presented testimonies [sic] and evidence to the Michigan courts and the jury that it knew or should have known to be falsified and when it failed to disclose evidence with exculpatory and impeachment value.

A.  The trial court and the [c]ourt of [a]ppeals' decision to deny Petitioner's constitutional claims conflict with U.S. Supreme Court[] precedent[].  The record substantially shows that the prosecutor sponsored, exploited, and suppressed falsified evidence.  The court['s] factual determination was not fairly supported by the record.

II.  [Petitioner] is entitle[d] to a new trial because of the harm caused by the admission of evidence obtained from a warrantless search of his home, which search was not justified by any exception to the warrant requirement of the Fo[u]rth Amendment.  The admission and use of the illegal[ly] obtained evidence was fundamentally unfair and violated Petitioner's due process.

A.  The [c]ourt of [a]ppeals holding that the exigent circumstances justified the warrantless search of [Petitioner]'s home was contrary to *Payton v New York* and *Brighan City v Stuart*.  There was no need to raid Petitioner's home to protect the police.

III.  The trial counsel's failure to discover the existence of forged documents, falsified testimonies, his failure to investigate key witness's police history, and his failure to hire an[] expert in Spanish language, and to object to the admission of damaging evidence deprived the Petitioner of his constitutional rights to effective assistance of counsel.

A.  The denial of Petitioner['s] ineffective assistance of trial and appellate counsel [claims] was contrary to U.S. Supreme Court decision[s,] and the court['s] factual find[ing]s were based on the prosecution['s] misrepresentation of the fact[s].

(ECF No. 23.)

## II.  Preliminary Matters

### A.  Petitioner's Motion to Strike Supplemental Answer (ECF No. 33.)

Petitioner moves to strike Respondent's supplemental answer to the amended petition on the ground that it is untimely.  Because the supplemental answer was timely filed, the Court is denying Petitioner's motion.

On December 2, 2021, this Court granted Respondent a fourteen-day extension of time to file the answer.  Respondent was given until December 17,

6

2021 to file the supplemental answer.  The answer was filed on that date.

Therefore, there is no basis to strike it.

### B.  Whether the Amended Petition Supersedes the Original Petition

Respondent argues in the supplemental answer that the amended petition

supersedes the original petition.  The Court disagrees.

"Generally, amended pleadings supersede original pleadings."  *Braden v.*

*United States*, 817 F.3d 926, 930 (6th Cir. 2016) (quoting *Hayward v. Cleveland*

*Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014)).  "This rule applies to habeas

petitions."  *Id.* (citing *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014)).

Exceptions to this rule occur "where a party evinces an intent for the amended

pleading to supplement rather than supersede the original pleading, and where a

party is forced to amend a pleading by court order."  *Id.* (internal citations

omitted).  "An amended pleading supersedes a former pleading if the amended

pleading 'is complete in itself and does not refer to or adopt a former pleading[.]'"

*Id*. (quoting *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014)).

Here, Petitioner's pro se amended and supplemental pleadings, when viewed

liberally, evince an intent to supplement, rather than supersede, the original

petition and the claims raised.  In fact, Petitioner's amended petition restates some,

but not all, of the claims raised in the original petition.  Petitioner has not stated

that he intended to abandon any of the claims raised in the original petition.

Therefore, the amended petition is not "complete in itself." Accordingly, the Court views the amended petition and supporting memorandum as supplementing, rather than superseding, the original petition, and will review the original and supplemental petition together.

### III.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner challenging "a matter 'adjudicated on the merits in State court'" must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)) (brackets added).  Further,

> under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

8

> prisoner's case. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.

*Id.* at 75 (internal quotation marks and citation omitted).

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations and quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Thus, "[o]nly an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.), *cert. denied*, 140 S. Ct. 445 (2019) (quoting *Richter*, 562 U.S. at 103). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris*, 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)).

## IV.  Analysis of Petitioner's Claims

## A.  Petitioner's Fourth Amendment Claims

In the first claim in his original petition and second claim in his amended petition, Petitioner argues that he is entitled to habeas relief because his Fourth Amendment rights were violated by the warrantless search of his house and the seizure of evidence.  Petitioner argues that the State court erred in denying his motion to suppress the evidence.

Federal habeas review of a petitioner's arrest or search is barred where the State provided a full and fair opportunity to litigate the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the State must have provided a mechanism for the petitioner to raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).  The "focus[ is] on the *opportunity* for fair consideration presented by the state courts, not the procedure used in a given case to address the specific argument of a given defendant."  *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013) (emphasis in original).  A habeas court "do[es] not review the 'correctness' of the state court decision."  *Fulcher v. Logan Cnty. Cir. Ct.*, 459 F. App'x 516, 521 (6th Cir. 2012) (citing *Riley*, 674 F.2d 526).

10

Petitioner was able to present his Fourth Amendment claim to the State trial court in his pre-trial motion to suppress.  Petitioner was later able to present his Fourth Amendment claim to the Michigan appellate courts.  That is sufficient to preclude review of the claim on habeas review.  *Good v. Berghuis*, 729 F.3d at 640.

### B.  Petitioner's Ineffective Assistance of Trial Counsel Claims

In the second, third, and fifth claims in his original petition, Petitioner alleges he was denied the effective assistance of trial counsel.  Petitioner raised these claims on direct appeal.

### 1.   *Strickland*

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two-prong test.  First, he must demonstrate that, "considering all the circumstances[,]" "counsel's performance was [so] deficient" that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687, 688 (1984).  In doing so, Petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Id*. at 689.  In other words, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be

11

considered sound trial strategy." *Id.* (internal quotation marks and citation omitted).

Second, Petitioner "must show that the deficient performance prejudiced the defense." *Id.* at 687.  To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "*Strickland*'s test for prejudice is a demanding one.  'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112).  Petitioner bears the burden of showing "a 'reasonable probability' that the result of the proceeding would have been different." *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

## 2.  Failure to Object to Evidence

In his second claim, Petitioner argues that trial counsel was ineffective for failing to object to the admission of evidence recovered from co-defendant Jennings-Bush's house.  The Michigan Court of Appeals rejected this claim, finding that the evidence was relevant to the charges against Petitioner and was more probative than prejudicial.  *Solernorona*, 2012 WL 1521444, at *5-6.  Because the evidence was admissible, the Michigan Court of Appeals concluded that trial counsel was not ineffective for failing to object to its admission.  *Id.*

Trial counsel cannot be found ineffective for failing to raise futile objections. *See Milstead v. Sherry*, 525 F. App'x 323, 326 (6th Cir. 2013) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996), overruled on other grounds by *Abdur'Rahman v. Bell*, 392 F.3d 174 (6th Cir. 2004)).  Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that the seized evidence was relevant and admissible under Michigan law, this Court must defer to that determination in resolving Petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x. 431, 437-38 (6th Cir. 2008).  "Because [this Court] cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court must reject Petitioner's ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005) (rejecting the petitioner's ineffective assistance of counsel claim based on counsel's failure to seek the admission of evidence that the state court held was inadmissible).  Trial counsel cannot be found ineffective for failing to raise a futile claim.

### 3.  Conflict of Interest

Petitioner argues in his third claim that trial counsel labored under an actual conflict of interest because trial counsel's wife and law partner represented one of Petitioner's co-defendants and another co-defendant was represented by an attorney who shared office space with them.  The Michigan Court of Appeals rejected the claim, finding that Petitioner failed to show that trial counsel was laboring under an actual conflict of interest which adversely affected counsel's performance.  *Solernorona*, 2012 WL 1521444, at *14.

In *Strickland*, the Supreme Court recognized that "[i]n certain Sixth Amendment contexts, prejudice is presumed."  466 U.S. at 692.  The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.  So are various kinds of state interference with counsel's assistance."  *Id.*  The *Strickland* Court further noted that there was "[o]ne type of ineffective assistance of counsel claim warrant[ing] a similar, though more limited, presumption of prejudice[,]" namely, cases involving "an actual conflict of interest" that "adversely affected [counsel's] performance."  *Id.* (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980)).

"The *Sullivan* standard grew out of the [Supreme] Court's prior recognition that when 'a trial court improperly requires joint representation over timely objection,' ineffective assistance of counsel is presumed."  *Smith v. Hofbauer*, 312

F.3d 809, 814 (6th Cir. 2002) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 488

(1978)).  In *Cuyler v. Sullivan*, the Supreme Court declined to extend *Holloway's*

presumed ineffectiveness where no objection was made to the joint representation

and held that, absent an objection, the defendant must demonstrate that an actual

conflict of interest existed that adversely affected his attorney's performance.  446

U.S. at 348.

In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Court questioned whether

*Holloway* or *Sullivan* applied beyond the joint representation context.  *Id.* at 175.

*Mickens* involved a claimed conflict of interest where counsel successively

represented the defendant in different proceedings.  Although noting that the

*Sullivan* rule had been applied "unblinkingly" to various kinds of conflicts of

interest that did not involve multiple representation, the *Mickens* Court noted that

the language in *Sullivan* "does not clearly establish, or indeed even support, such

expansive application."  *Mickens*, 535 U.S. at 175.  The Supreme Court further

noted that *Sullivan* and the Supreme Court's earlier case of *Holloway v. Arkansas*,

435 U.S. 475 (1978), "stressed the high probability of prejudice arising from

multiple representation, and the difficulty of proving that prejudice."  *Id.*  In the

aftermath of *Mickens,* the Sixth Circuit held in *Smith v. Hofbauer*, 312 F.3d 809

(2002), that "clearly established" Supreme Court precedent does not extend

*Sullivan* beyond the context of joint representation.  *Id.* at 817.

15

In *Smith*, the Sixth Circuit held that a habeas petitioner is not entitled to use *Sullivan*'s presumed prejudice standard for an ineffective assistance of counsel claim that arose from a conflict of interest other than multiple representation. *Id.* at 817-18. The Sixth Circuit has continued to limit *Sullivan* and *Holloway* to conflicts based on joint representation. *See McElrath v. Simpson*, 595 F.3d 624, 631, n. 7 (6th Cir. 2010) ("The [Supreme] Court in *Mickens* clarified that, for purposes of review under AEDPA, its clearly established precedent has not applied the *Sullivan* standard outside the context of a counsel's concurrent representation of more than one defendant"); *Harrison v. Motley*, 478 F.3d 750, 756, 57 (6th Cir. 2007) (concluding that neither *Sullivan* nor *Holloway* applied to the petitioner's claim that his lawyers had a conflict of interest in representing him based on their fears of criminal prosecution and malpractice for witness tampering); *Stewart v. Wolfenbarger*, 468 F. 3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for Section 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."); *Whiting v. Burt*, 395 F. 3d 602, 619 (6th Cir. 2005) (presumed prejudice standard is inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *United States v. Moss*, 323 F.3d 445, 473, n. 25 (6th Cir. 2003) ( expressing that "the *Mickens* rationale compels our strong hesitation to

16

apply *Sullivan* to conflicts of interest cases arising outside of the joint representation context"). Thus, expanding the presumed prejudice standard of *Sullivan* "beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law—one that clearly has not been dictated by prior Supreme Court precedent." *Whiting,* 395 F.3d at 619-20.

In *Lordi v. Ishee*, 384 F.3d 189 (6th Cir. 2004), the Sixth Circuit held that the previous representation of a prosecution witness by the law partner of the petitioner's counsel presented merely a case of a potential conflict of interest that never ripened into an actual conflict in violation of the petitioner's right to the effective assistance of counsel. *Id.* at 191, 193. The Sixth Circuit concluded that the Ohio courts appropriately applied the *Strickland* standard in rejecting the petitioner's ineffective assistance of counsel claim. *Id.* at 193.

The Sixth Circuit similarly declined to apply the presumed prejudice standard in *Benge v. Johnson*, 474 F.3d 236 (6th Cir. 2007), where defense counsel concurrently represented the defendant and a prosecution witness in an unrelated drug case. *Id.* at 244-45. The court held that the state appellate court's ruling that defense counsel's concurrent representation did not amount to a conflict of interest was not contrary to clearly established federal law, as required to support a claim for federal habeas relief. *Id.* at 245.

17

Petitioner's claimed conflict of interest does not arise from multiple concurrent representation of joint defendants at the same trial. Therefore, the presumed prejudice standard enunciated in *Cuyler v. Sullivan* is inapplicable to Petitioner's ineffective assistance of trial counsel claim. Instead, the *Strickland* standard applies and Petitioner must demonstrate actual prejudice due to counsel's alleged conflict of interest. Because Petitioner makes no such showing, he is not entitled to relief on this claim.

### 4. Failure to Object to Witness List Amendment

In his fifth claim, Petitioner argues first that trial counsel was ineffective for failing to object to the prosecution's addition of three co-defendants (Mr. Licorish, Mr. Kennedy, and Mr. Jennings-Bush) to its witness list the day before trial.[2] The Michigan Court of Appeals concluded that the prosecution had good cause under Michigan Compiled Laws Section 767.40a(4) to add the three co-defendants to the witness list the day before trial because it was only on that date that the co-defendants agreed to plead guilty and testify against Petitioner. *Solernorona*, 2012 WL 1521444, at *12. The Michigan Court of Appeals concluded that because it

---

[2] Petitioner appears to also argue that the prosecutor untimely added translator Maria Gialdi and Detective Dziedzic; however, both appear as potential witnesses on an October 13, 2009 witness list filed with the Oakland County Circuit Court. (*See* ECF No. 15-7 at Pg ID 2005-06.)

18

was proper to amend the witness list to allow the co-defendants to testify, counsel was not ineffective for failing to object to the amendment.  *Id.* at *14.

As stated earlier, trial counsel cannot be found ineffective for failing to raise futile objections and federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition[.]"  *See supra.*  Therefore, this Court cannot conclude that the State court's decision with respect to this claim was unreasonable.

Petitioner further asserts in his fifth claim that counsel was ineffective for failing to obtain the co-defendants' criminal histories to impeach their credibility. Petitioner's claim is belied by the record, however.  Counsel thoroughly cross-examined these individuals about their extensive criminal histories and convictions, their use of alias and false birthdates, and their familiarity with the criminal justice system.  (*See* ECF No. 15-9 at Pg ID 2373-97; ECF No. 5-10 at Pg ID 2590, 2672-77.)

For these reasons, Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

## C.  Petitioner's Sentencing Claim

In the fourth claim of his original petition, Petitioner alleges that the trial court violated his Sixth Amendment right to a jury trial by using factors not presented to the jury or admitted by Petitioner to depart above the sentencing

guidelines range.  As indicated earlier, on remand, the trial court re-sentenced Petitioner to 180 months to 50 years in prison, of which the minimum was an upward departure from the sentencing guidelines range of 51-85 months. *Solernorona*, 2014 WL 129270, at *1-2.

In *Alleyne v. United States*, 570 U.S. 99 ( 2013), the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt.  *Id.* at 103. *Alleyne* expanded *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005), where the Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  *Alleyne* also overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder.  *Alleyne,* 570 U.S. at 106-07. The *Alleyne* Court indicated, however, that it's decision "does not mean that any fact that influences judicial discretion must be found by a jury" because the Court has "long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."  *Id.* at 116 (citations omitted).

Relying on *Alleyne*, the Michigan Supreme Court subsequently held that

Michigan's mandatory sentencing guidelines scheme violates the Sixth

Amendment right to a jury trial.  *People v. Lockridge*, 870 N.W.2d 502 (Mich.

2015).  The Michigan Supreme Court reasoned:

> [Michigan's] guidelines *require* judicial fact-finding
> beyond facts admitted by the defendant or found by the
> jury to score offense variables that *mandatorily* increase
> the floor of the guidelines minimum sentence range, i.e.,
> the "mandatory minimum" sentence under *Alleyne*.

*Id*. at 506 (emphasis in original).  The Court ruled, however, that a defendant who

"received an upward departure sentence that did not rely on the minimum sentence

range from the improperly scored guidelines . . . cannot show prejudice from any

error in scoring the [offense variables] in violation of *Alleyne*."  *Id.* at 522.

*Alleyne*, therefore, does not apply where "the minimum sentence set by the court

was based on the court's exercise of discretion, not on judicial-fact finding that

mandatorily increased the minimum sentence."  *Cooper v. Haas,* No. 17-1235,

2018 WL 1224451, at *5 (6th Cir. Jan. 9, 2018) (citing *Lockridge*, 870 N.W.2d at

522).  That is the case, here, where the trial court departed upwards from the

sentencing guidelines when sentencing Petitioner.

### D.  Petitioner's Remaining Claims

Respondent contends that Petitioner's first and third claims in the amended

petition are procedurally defaulted because Petitioner raised these claims for the

21

first time in his post-conviction motion and failed to show cause and prejudice for failing to raise them in his appeal of right as required by Michigan Court Rule 6.508(D)(3).  This Court agrees.

When the State courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged constitutional violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  If the petitioner fails to show cause for the procedural default, the federal habeas court need not reach the prejudice issue.  *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  "To be credible, such a claim [of innocence] requires [the] petitioner to support [the] allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal

insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

The Michigan Court of Appeals denied Petitioner's post-conviction appeal in a form order "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Soler-Norona*, No. 348547 (Mich. Ct. App. July 1, 2020); (ECF No. 23 at Pg ID 4055.) The Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Soler-Norona*, 507 Mich. at 869. These orders did not refer to subsection (D)(3), nor did they mention Petitioner's failure to raise his claims on direct appeal as a rationale for rejecting his post-conviction appeals. As such, they "are ambiguous" and "unexplained." *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). In that case, this Court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection of [Petitioner]'s claims. *Id.*

The trial court, in rejecting Petitioner's post-conviction claims, cited Michigan Court Rule 6.508(D)(3) several times and the rule's requirement that a defendant show cause and prejudice for failing to raise an issue on direct appeal. (*See* ECF No. 32-6 at Pg ID 5495, 5498-99, 5502-03.) The court indicated that Petitioner was not entitled to relief on the claims because he did not show good

cause for failing to raise the issues on direct appeal or actual prejudice.  Because

the trial court denied Petitioner post-conviction relief based on the procedural

grounds stated in Rule 6.508(D)(3), Petitioner's claims are procedurally defaulted.

*See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007).

Petitioner argues that the procedural default rule should not apply because he

has "newly discovered evidence that the prosecution withheld exculpatory

evidence or knowingly perjured testimony." [3]  (ECF No. 34 at Pg ID 6692.)

Petitioner relies on an affidavit "from" Lamont Gough[4] and an expert's analysis of

---

[3] In his reply brief, Petitioner also lists ineffective assistance of counsel among the causes to excuse a procedural default (*see* ECF No. 34 at Pg ID 6692); however, he never specifically argues how counsel was ineffective with respect to these defaulted claims.  It does not appear to the Court that he is asserting ineffectiveness of appellate counsel as cause for his procedural default.  In any event, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Appellate counsel filed a 39-page brief raising several claims.  (*See* ECF No. 15-14 at Pg ID 3243-88.)  Appellate counsel also filed a supplemental brief raising Petitioner's *Alleyne* claim.  (*See* ECF No. 4-1 at Pg ID 362-76.)  Appellate counsel succeeded in getting Petitioner's case remanded for sentencing and his sentence reduced by 30 months.  Moreover, for the reasons stated by Respondent, none of the claims raised by Petitioner in his post-conviction motion were "dead bang winners."  Notably, Petitioner took the opportunity to file a pro per brief on appeal (*see* ECF No. 15-14 at Pg ID 3352-92) but he did not raise these claims and provides no reason why he failed to do so.

[4] Mr. Gough was an individual who allegedly knew Petitioner from prior business transactions and encountered Petitioner while they were incarcerated on unrelated charges.  (*See* ECF No. 15-2 at Pg ID 917-18.)  Mr. Gough was not involved in the armed robbery but allegedly was asked by Petitioner to kill the main witness against Petitioner.  (*Id.* at 918.)

the handwriting on a note allegedly discussing a plot to kill the prosecutor's main witness, James Whittington.  Notably, as discussed *infra*, Petitioner never obtained a signed affidavit from Mr. Gough.  Petitioner hired an investigator who drafted the affidavit and sent it to Mr. Gough, but Mr. Gough never responded.  (*See* ECF No. 24 at Pg ID 4187.)

According to this affidavit, the police fabricated evidence by forging a letter purportedly from Petitioner, in which Petitioner allegedly plotted with other actors to kill Mr. Whittington.  Petitioner claims his attorney was prevented from questioning Mr. Gough about this issue because the trial court denied Petitioner's request for a copy of the note.  (*Id.* at Pg ID 6694-97.)  In his reply brief, Petitioner does not indicate when he learned that the police forged this letter or decided to falsely accuse Petitioner of plotting to kill Mr. Whittington, or when—if ever—he learned that Mr. Gough was willing to sign an affidavit attesting to these allegations of police wrongdoing.

Petitioner indicates that, at the January 27, 2009 preliminary examination, he and his trial counsel learned that the police discovered a plot purportedly orchestrated by Petitioner to kill Mr. Whittington and that the police had recovered a note written by Petitioner in furtherance of that plot.[5]  (*See* ECF No. 24 at Pg ID

---

[5] The prosecution offered this evidence in support of its motion to close the courtroom during Mr. Whittington's preliminary examination testimony.  (*See* ECF

4119.)  While the prosecution refused to identify on the record the name of the jail

house informant (i.e., Mr. Gough) from whom the police obtained this information,

the name purportedly was in a police report that was going to be provided to the

defense.  (ECF No. 15-2 at Pg ID 926-27.)  The judge presiding over the

preliminary examination ordered the note, along with the police report, turned over

to defense counsel.  (*See id.* at Pg ID 920-21.)  Petitioner alleges that his attorney

never received a copy of the note, although it appears that the police report was

provided to the defense in February 2009.  (*See* ECF No. 23 at Pg ID 4043.)  On

January 30, 2017, Petitioner, through a third-party, filed a Freedom of Information

Act request with the Southfield Police Department, requesting several evidentiary

items, including the note from the jail, concerning the plot.  (*Id.* at Pg ID 4172-75.)

Petitioner subsequently had the note analyzed by a handwriting expert, who claims

that the handwriting on the note is not Petitioner's.  (*Id.*at Pg ID 4176-77).

On May 30, 2018, Petitioner's cousin retained Scott Lewis, an investigator,

to track down Mr. Gough to obtain an affidavit from him concerning his

discussions with Petitioner while they were together in the Oakland County Jail.

(*See* ECF No. 24 at Pg ID 4187.)  Mr. Lewis located Mr. Gough in the New York

City Department of Corrections, where he was incarcerated, and sent him an

---

No. 15-2 at Pg ID 908-09, 919.)  The State court denied the request.  (*See id.* at Pg
ID 967-73.)

affidavit to sign. (*Id.*)  Mr. Gough never responded to Mr. Lewis' communication or returned the affidavit.  (*Id.*)

"[F]ederal law generally limits action taken based on newly discovered evidence to situations where the evidence could not have been discovered sooner through due diligence." *Hodge v. Haeberlin*, 579 F.3d 627, 637 (6th Cir. 2009). Petitioner's preliminary examination was on January 27, 2009, and he obtained the police report identifying Mr. Gough as the jail house informant in February 2009. Petitioner was convicted on May 13, 2010.  Direct review of his conviction ended in 2012.  Petitioner does not explain why he waited eight years after learning of the existence of this plot to attempt to obtain a copy of the note and have it analyzed by a handwriting expert, nor does he explain why he waited even longer to retain an investigator to seek out Mr. Gough and obtain an affidavit from him.  Petitioner failed to use due diligence to obtain this evidence.  Accordingly, his default is not excused.

Moreover, assuming Petitioner could establish cause for the delay in obtaining this note, having it analyzed, and/or contacting Mr. Gough, he cannot establish actual prejudice to excuse the default.  As the trial court indicated when denying Petitioner's perjury claim on post-conviction review, the prosecution did not present evidence at Petitioner's trial about the plan to murder Mr. Whittington nor did Mr. Gough testify at trial.  (*See* ECF No. 32-6 at Pg ID 5501.)  Thus, this

27

new evidence, which pertains only to that plan, would not have changed the outcome of Petitioner's case.  (*Id.* 5501-02).  In other words, this new evidence was not relevant to Petitioner's conviction and did not provide exculpatory evidence concerning that conviction.

To avoid the procedural default rule, Petitioner also argues that the errors he raised in his post-conviction motion are structural errors requiring automatic reversal.  (ECF No. 34 at Pg ID 6693.)  A structural error is one that "defies analysis by harmless error standards."  *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)) (brackets omitted).  "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial."  *Id.*  [T]he defining feature of a structural error is that it 'affects the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'"  *Id.* at 1907-08 (quoting *Fulminante*, 499 U.S. at 310 (brackets omitted).

In *Weaver*, the Supreme Court identified three rationales for structural errors: (1) when the "right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," (2) when "the effects of the error are simply too hard to measure," and (3) when "the error always results in fundamental unfairness."  *Id*. at 1908.  The first category includes the

defendant's right to put on his own defense.  *Id*. (citations omitted).  The second

category arises when it is impossible to show that an error was harmless such as

when a "defendant is denied the right to select his or her own attorney."  *Id*.

(citation omitted).  The third category results when, for example, "an indigent

defendant is denied an attorney or if the judge fails to give a reasonable-doubt

instruction."  *Id*. (citations omitted).

The Supreme Court has held that a conviction obtained through use of false

evidence that representatives of the State solicited or knowingly allowed to go

uncorrected "is fundamentally unfair, and must be set aside if there is any

reasonable likelihood that the false testimony could have affected the judgment of

the jury."  *Smith v. Metrish*, 426 F. App'x 554, 565 (6th Cir. 2011) (quoting *United

States v. Agurs*, 427 U.S. 97, 103 (1976)).  "A false testimony claim is cognizable

on habeas because the deliberate deception of a court and jurors by the presentation

of known false evidence is incompatible with rudimentary demands of justice."  *Id.*

(quoting *Akrawi v. Booker*, 572 F.3d 252, 265 (6th Cir. 2009)).  Such a claim,

however, requires a showing that the false testimony was material.  *Id*. (citing

*Abdus-Samad*, 420 F.3d at 625-26).  As discussed above, the evidence Petitioner

claims was false was not presented at his trial.  The note and the information

purportedly obtained from Mr. Gough were presented only at the preliminary

examination to support the prosecutor's request to close the courtroom.  Thus, this

allegedly false evidence cannot be said to be material.  *See Akrawi*, 572 F.3d at 266 (concluding "that the factual discrepancies which [the petitioner] call[ed] prosecution-sponsored perjury are of relatively minor significance" and, therefore "are not indicative of the sort of 'structural error' that could justify automatic reversal").

Moreover, the Sixth Circuit has held that "petitioners must show actual prejudice to excuse their default, even if the error is structural." *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (citing *Francis v. Henderson*, 425 U.S. 536, 542 (1976)).  A petitioner must show that "the outcome would have been different" "regardless of the nature of the underlying constitutional claim." *Id.* at 650-51.  For the reasons discussed above, Petitioner cannot make that showing.

In summary, Petitioner fails to show cause and prejudice to excuse his procedural default.  Accordingly, Petitioner is not entitled to habeas relief on his defaulted claims.

## IV.  Conclusion

For the reasons stated, the Court is denying the petition and amended petition for writ of habeas corpus with prejudice.  In order to appeal this decision, Petitioner must obtain a certificate of appealability.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted). When a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner fails to make a substantial showing of the denial of a federal constitutional right. Further, jurists of reason would not find the correctness of the Court's procedural ruling debatable. Therefore, the Court is denying Petitioner a certificate of appealability. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith and petitioner may proceed in forma pauperis on appeal. *See* 28 U.S.C. 1915(a)(3).

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

31

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability but leave to proceed informa pauperis on appeal is **GRANTED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 16, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 16, 2022, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager